**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

AUGUST 6, 2026

CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | No. 104074-1 |
| ARYNN KYLA HAUK, | ) | |
| | ) | |
| Petitioner, | ) | EN BANC |
| | ) | |
| and | ) | |
| | ) | Filed: <u>August 6, 2026</u> |
| BRANDON JEFFREY WUESTHOFF, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

MELODY, J.—Cases involving the geographic relocation of a child's residence following their parents' dissolution are "intensely emotional." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Relocation nearly always disrupts the prior expectations of the nonrelocating parent and, when the decision to relocate comes after a parenting plan is already in place, additionally requires modification of that plan.

This appeal requires us to construe the "Child Relocation Act," RCW 26.09.405-.560, and its rebuttable presumption in favor of the parent wishing to

relocate with the child. We hold that for purposes of determining whether the presumption applies, courts calculate residential time at the point when the notice of intent to relocate is served. In phased plans, this means the phase in place when the notice is served. The Court of Appeals held that future time—time that is anticipated by the parenting plan but not yet spent—should also be counted. Accordingly, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Daughter T.W. was born to mother, petitioner Arynn Hauk, and father, respondent Brandon Wuesthoff, who were married at the time. Hauk later filed to dissolve the marriage. Following a dissolution trial, the superior court entered a parenting plan that set the residential schedule for T.W., who was then two years old. Clerk's Papers (CP) at 427-38.

The parenting plan provided a phased-in residential schedule—a schedule in which the child's time with one parent increases over time. This residential schedule included four phases, with each phase giving Wuesthoff increasingly more time with T.W. CP at 429-30. During phase one, effective for the first three months of the parenting plan, Wuesthoff had four overnights with T.W. every two weeks. During phase two, effective until T.W. turned three, Wuesthoff had five overnights every two weeks. During phase three, effective from age three to the start of kindergarten,

Wuesthoff had six overnights every two weeks. From kindergarten on, Wuesthoff was set to have half of all overnights with T.W., equally splitting residential time with Hauk.

Nearly two years after the parenting plan was entered, Hauk filed with the court a "Notice of Intent to Move with Children (Relocation)." CP at 1-4. In the notice, Hauk proposed to move with T.W. to Virginia in order to live near her fiancé's children from the fiancé's previous marriage. Hawk also cited a lower cost of living and better job opportunities for Hauk and her fiancé in Virginia. At the time of Hauk's notice, the parties were in the third phase of the parenting plan, so Wuesthoff had 6 out of every 14 overnights.[1] CP at 429-30. This was about a year and four months before the planned increase to a 50/50 residential schedule. Wuesthoff objected to relocation, and the matter was set for trial.

In Hauk's pretrial brief, she invoked the presumption in favor of relocation. Under RCW 26.09.520 and .525, there is a rebuttable presumption in favor of relocation unless the parents have "substantially equal residential time," defined as

---

[1] Although the record contains the date that Hauk filed the notice with the superior court, it does not reflect the date the notice was served on Wuesthoff. The Child Relocation Act does not require the parent proposing relocation to file the relocation notice in court, but it does require service on the other parent. RCW 26.09.430, .440. Then, the nonrelocating parent may object to relocation by filing and serving an objection within 30 days of the receipt of the relocation notice. RCW 26.09.480. No party here disputes that Wuesthoff was served or that his objection to relocation was timely.

each parent having at least 45 percent of the residential time with the child. Hauk claimed the presumption because under the current phase of the parenting plan, Hauk had 57 percent of the residential time as compared with Wuesthoff's 43 percent. CP at 106, 214-15, 350. Wuesthoff disputed the application of the presumption, arguing that he had over 45 percent of residential time during the current phase of the plan when holidays were accounted for. *See* CP at 234-52.

The parties went to trial on relocation. The superior court heard testimony from 11 witnesses, including an appointed guardian ad litem. At the end of trial, the trial court found that T.W. was "extremely well-bonded with both parents" and that "the parenting here seems to be quite exceptional, in terms of what [T.W.] gets from each of these parents." Verbatim Rep. of Proc. (VRP) at 24, 16.

To determine whether to apply the presumption in favor of relocation, the court calculated residential time over the entire parenting plan until T.W. reached age 18. Because T.W. would spend 46.9 percent of overnights with Wuesthoff over the full life of the plan, the court concluded that T.W. spent substantially equal time with each parent. The court made no finding as to whether the 45 percent threshold

would have been met had the court calculated residential time at the current phase of the plan.

The court then applied the statutory factors in the Child Relocation Act, RCW 26.09.520, and concluded that relocation was not in T.W.'s best interest. CP at 410-17, 420. The court did find, however, that had there been a presumption in Hauk's favor, Wuesthoff may not have overcome the presumption. CP at 421.

Despite not prevailing at trial, Hauk informed the court that she still intended to move to Virginia. Accordingly, the trial court entered a modified parenting plan to reflect Hauk's relocation. CP at 359-68. The new parenting plan provided that T.W. would spend school years with Wuesthoff in Washington and summers with Hauk in Virginia. This is the parenting plan currently in place. Hauk appealed the denial of her request to relocate, including the trial court's decision to deny her the presumption in favor of relocation.

The Court of Appeals affirmed in a split opinion. The majority affirmed the trial court's refusal to apply the relocation presumption, determining that the parties shared substantially equal residential time based on a calculation over the full life of the parenting plan. *In re Marriage of Hauk*, 34 Wn. App. 2d 8, 15-19, 565 P.3d 660 (2025). Judge Veljacic dissented. *Id.* at 21. Judge Veljacic would have held that the

residential time calculation must include only time actually spent to date, and not any future time designated in the parenting plan but not yet spent. *Id.* at 21-22.

We granted Hauk's petition for review to resolve how trial courts should calculate residential time in phased parenting plans for purposes of determining whether the presumption in favor of relocation applies.

ANALYSIS

A.    Washington's Child Relocation Act

In 2000, the legislature enacted the Child Relocation Act to specify the terms under which superior courts will "allow or not allow a person to relocate [a] child." RCW 26.09.420. The final bill report acknowledged that relocation is often "heavily litigated" and that more robust procedures were needed "to determine relocation cases." FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 2884, at 1-2, 56th Leg., Reg. Sess. (Wash. 2000). In establishing those procedures, the legislature intentionally departed from two of this court's prior decisions regarding relocation.

Specifically, the legislature supplanted this court's rulings in *Littlefield*, 133 Wn.2d 39, and *In re Marriage of Pape*, 139 Wn.2d 694, 989 P.2d 1120 (1999). *See* LAWS OF 2000, ch. 21, § 1 ("By this act, the legislature intends to supersede" *Littlefield* and *Pape*.). In *Littlefield*, this court questioned whether trial courts had authority to "prohibit a custodial parent from relocating without notice to the other

parent." 133 Wn.2d at 49. And in *Pape*, we held that a primary residential parent seeking a court order permitting relocation "must demonstrate a bona fide reason for the relocation" because the court already considered the child's best interests in establishing the primary residential placement, triggering a presumption that the "primary placement remain intact." 139 Wn.2d at 696, 715-16.

The Child Relocation Act replaced these rulings with a structured framework to guide parents and courts in relocation cases. Under the statute, any parent with at least 45 percent of the child's residential time must serve notice to the other parent before moving. RCW 26.09.430, .525(2).[2] If the relocation would alter the residential schedule, the relocating parent must also provide a proposed residential schedule that reflects how residential time would be allocated following the move. RCW 26.09.440(2)(b)(vi).

If the nonrelocating party does not file an objection with the superior court within 30 days after being served with notice, then relocation of the child is permitted and the residential schedule is modified in accord with the relocating party's proposal. RCW 26.09.500(1), (5). If the nonrelocating parent objects to relocation

---

[2] The Child Relocation Act does not require a parent with less than 45 percent of residential time to provide notice of their intent to relocate. *See* RCW 26.09.410(2), .430, .525(2). Those parents must turn to the modification statute if they seek to alter the residential schedule as a result of their own move. *See, e.g.*, RCW 26.09.260.

or the revised residential schedule, the superior court sets the matter for a fact-finding hearing. *See* RCW 26.09.480(1).

At the hearing, the parent proposing relocation is entitled to a rebuttable presumption that relocation is permitted. RCW 26.09.520. The presumption may be rebutted by the nonrelocating parent if they show that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person." *Id.* And the presumption falls away altogether if the parents share substantially equal residential time. RCW 26.09.525(1)(a).

In calculating residential time, courts must base their calculation on the terms of the parenting plan "unless: (i) There has been an ongoing pattern of substantial deviation from the residential schedule; (ii) both parents have agreed to the deviation; and (iii) the deviation is not based on circumstances that are beyond either parent's ability to control." RCW 26.09.525(2).

After determining whether the presumption in favor of relocation applies, the court considers 11 unweighted factors to determine whether relocation is in the best interests of the child. RCW 26.09.520, .525(1)(b). Put another way, whether or not the presumption applies, the court always proceeds to apply the 11 statutory factors.[3]

---

[3] The legislature clarified this in 2019 following a Court of Appeals opinion holding that the Child Relocation Act did not apply "when the child's residential time is designated equal or substantially equal." *In re Marriage of Worthley*, 198 Wn. App. 419, 424, 393 P.3d 859 (2017). The legislature confirmed that it does. LAWS OF 2019, ch. 79, § 1.

When applying the statutory factors, the trial court must consider each factor and enter specific findings or articulate its application of each. *In re Marriage of Horner*, 151 Wn.2d 884, 893-897, 93 P.3d 124 (2004).

B.      Measuring Residential Time for Phased-In Parenting Plans

This case requires us to interpret RCW 26.09.525(2) and determine the point at which to measure residential time under a parenting plan with a phased-in residential schedule. Hauk argues that residential time is measured at the phase of the plan in place when a parent serves notice of their intent to relocate. Wuesthoff contends, and the Court of Appeals held, that time is measured viewing the parenting plan as a whole and without restriction to the current phase. *See Hauk*, 34 Wn. App. 2d at 18.

Statutory interpretation is a question of law reviewed de novo. *In re Marriage of Wilcox*, 3 Wn.3d 507, 517, 553 P.3d 614 (2024) (citing *In re Marriage of Zandi*, 187 Wn.2d 921, 926, 391 P.3d 429 (2017)). If the meaning of the statute is plain from its text and context, we must give effect to that meaning as an expression of legislative intent. *Blomstrom v. Tripp*, 189 Wn.2d 379, 390, 402 P.3d 831 (2017). "If, after this inquiry, the statute remains ambiguous or unclear, it is appropriate to resort to canons of construction and legislative history." *Id.* A statute is ambiguous if it is "'susceptible to two or more reasonable interpretations.'"

*Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 305, 268 P.3d 892 (2011) (quoting *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005)).

The Child Relocation Act does not specify the point at which to calculate residential time for a phased-in parenting plan, and the statute is therefore ambiguous. The statutory text and context, though, is the place to start and favors Hauk. The statute defining "substantially equal residential time," RCW 26.09.525(2), primarily utilizes verbs in the present tense and present perfect tense— verb tenses that concentrate on the family's current circumstances. The statute defines "substantially equal residential time" in terms of which parent "*has* substantially equal residential time," how residential time "*is spent*," whether there "*has been* an ongoing pattern" of deviation from the parenting plan, and whether "parents *have agreed*" to such deviation. RCW 26.09.525 (emphasis added). These verb tenses provide strong evidence of legislative intent. *See State v. A.M.W.*, 5 Wn.3d 147, 169, 574 P.3d 101 (2025) ("The use of present-tense forms of the verb 'pose' . . . reinforces the time-bounded nature of the court's factual inquiry."); *Wrigley v. Dep't of Soc. & Health Servs.*, 195 Wn.2d 65, 73-77, 455 P.3d 1138 (2020) (evaluating verb tense to determine whether statute captured possible "future" conduct or only "past or current conduct").

The statute next door, RCW 26.09.520, also situates the relocation inquiry in the present. For example, in laying out the rights and duties of the relocating and objecting parents, the statute speaks of the "person *proposing* to relocate" and the "person *entitled* to object." *Id.* (emphasis added). And the best-interest factors likewise speak to the present or the past. *See* RCW 26.09.520(9) (weighing "whether it *is* feasible and desirable for the other party to relocate also" (emphasis added)). The only factor that uses a future-focused verb evaluates whether disrupting contact with the relocating parent "*would be* more detrimental" than disrupting contact with the objecting parent. *See* RCW 26.09.520(3) (emphasis added). But even this factor invites analysis of future harm based solely on the current strength of the parent-child relationships. Nothing in the language of RCW 26.09.520 or 26.09.525 directs trial courts to consider the parties' future or anticipated conduct.

This interpretation comports with our conclusion in the dependency context, where we were similarly asked to determine the proper point in time to measure a child's best interest. In *Wrigley*, this court considered whether a prediction of future harmful conduct by a parent qualifies as a report of child abuse requiring an investigation. 195 Wn.2d at 69-71. To answer that question, we looked to the verb tenses in surrounding statutory provisions that evaluated whether "'a child *has suffered* abuse or neglect,'" whether abusive instances "'*have occurred*,'" and

whether a child "'*is deprived*'" of nurture, health, or safety. *Id.* at 73 (some emphasis added) (quoting former RCW 26.44.030(1)(a) (2009)), 75 (emphasis added) (quoting former RCW 26.44.010 (1999)). We concluded that these verb tenses "indicate that the legislature intended the reports to be based on existing conduct, not on future speculation." *Id.* at 73-75. Here, too, whether there "*has been* an ongoing pattern" of deviation from the residential schedule, whether the "parents *have agreed*" to such deviation, and how time "*is* spent" use the same verb tenses as in *Wrigley*—directing the inquiry to existing conduct rather than to speculation about the future. *See* RCW 26.09.525 (emphasis added).

Hauk's interpretation is also more consistent with one of the Child Relocation Act's animating purposes: to supersede *Pape* and "shift[] the analysis away from only the best interests of the child to an analysis that focuses on both the child and the relocating person." *In re Marriage of Horner*, 151 Wn.2d 884, 887, 93 P.3d 124 (2004). Underlying that shift is the presumption that a fit parent will act in the best interest of their child—including when making the decision to relocate. *Id.* at 895. With phased-in plans, measuring residential time according to the entire plan would void the relocation presumption much of the time, a result inconsistent with the legislature's purpose in enacting it. *See, e.g.*, *Nelson v. P.S.C., Inc.*, 2 Wn.3d 227, 236, 535 P.3d 418 (2023) ("'Statutes should be interpreted to further, not frustrate,

their intended purpose.'" (quoting *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 99, 864 P.2d 937 (1994))); *In re Adoption of T.A.W.*, 186 Wn.2d 828, 840, 383 P.3d 492 (2016) ("If the statute at issue . . . incorporates a relevant statement of purpose, our reading of the statute should be consistent with that purpose.").

The dissent argues that looking to the entire plan is more consistent with legislative intent because the legislature "does *not*" intend to make relocation easier "for 'substantially equal residential time parenting plans.'" Dissent at 20. While correct, that merely begs the question presented by this appeal: how to measure *whether* a plan accords substantially equal residential time in the first place. To answer, we must understand the work that the rebuttable presumption accomplishes, which is to accord additional weight to the judgment of the parent who cares for the child more than 55 percent of the time. That parental judgment is necessarily dependent on the child's current age, developmental stage, needs, and relationships; after all, children grow and change. "[G]enerally, a parent who cares for the child a majority of the time should be better able to care for the child in that moment because they should know the very specific needs and routines of the child." *Hauk*, 34 Wn. App. 2d at 23 (Veljacic, J., dissenting). Measuring residential time at the phase of the plan when relocation is proposed gives appropriate weight to the judgment of the parent who currently provides the most care to the child.

Next is the problem that Wuesthoff's construction poses for phased plans with contingent phases—as pointed out by amici Northwest Justice Project, Sexual Violence Law Center, and King County Bar Association Domestic Violence Legal Advocacy Project. These are plans where increases in residential time are contingent on a parent meeting certain requirements, such as successful evaluation and treatment for domestic violence, substance abuse, or mental health conditions. Amicus Curiae Br. of NW Just. Project et al. at 8. Another common condition is the successful completion of supervised visits, which may be necessary when there is a history of parental abuse, abandonment, or neglect. RCW 26.09.191(4).

At the time of a trial on relocation, a superior court cannot know whether as-yet-unmet conditions will ever be satisfied. The result is that if, as Wuesthoff proposes, trial courts calculate residential time based on the entire life of the plan, they may end up including time from phases that will never be achieved.

In response, Wuesthoff correctly points out that there are no conditions on the planned increases to his residential time. He then proposes that in cases involving conditional phases conditional time could be omitted from the court's calculation of residential time. Resp't's Answer to Amicus Curiae Br. of NW Just. Project et al. at 3-7. Put differently, Wuesthoff proposes that his "whole plan" construction apply only to unconditionally phased plans, with time in conditional plans counted only up

to the phase actually achieved. The dissent appears to sign on to this approach, such that the statutory term "substantially equal residential time" can mean one thing for unconditional plans but something different for conditional ones. *See* dissent at 14-15, 21.

We decline to adopt this construction because nothing in the statute distinguishes between conditional and unconditional plans, and we see no basis to differentiate between the two. *See Porter v. Kirkendoll*, 194 Wn.2d 194, 212, 449 P.3d 627 (2019) (statutory interpretation must "'effectuate a consistent statutory scheme that maintains the integrity of the respective statute'" (quoting *Koenig v. City of Des Moines*, 158 Wn.2d 173, 184, 142 P.3d 162 (2006))). The legislature chose to treat all types of parenting plans together in the Child Relocation Act, and we decline to parse them into subtypes with distinct rules.

We next consider the parties' policy arguments, as both sides warn of the risk of gamesmanship. Wuesthoff argues that measuring residential time based on the current phase of the plan will incentivize a parent who currently has the majority of the residential time, but whose time is set to decrease in a future phase, to rush to relocate before the next phase takes effect. Suppl. Br. of Resp't at 30-31. Hauk argues that measuring time based on anticipatory time not yet spent will allow a parent currently assigned the minority of the residential time to exert appreciable

control over the custodial parent and make it harder for that parent to move and self-determine the next chapter of their life. Suppl. Br. of Pet'r at 22-23.

We conclude that neither risk of gamesmanship outweighs the other. The legislature is aware of the risks of gamesmanship and implemented safeguards to check them within the Child Relocation Act. One guardrail is the relocation standard itself, which requires the court to consider "[t]he reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation." RCW 26.09.520(5). A second is the provision permitting courts to sanction a party "if it finds that a proposal to relocate the child or an objection to an intended relocation" was made "to harass a person, to interfere in bad faith with the relationship between the child and another person entitled to residential time or visitation with the child, or to unnecessarily delay or needlessly increase the cost of litigation." RCW 26.09.550. These provisions equip courts to respond to bad-faith behavior by litigants without requiring us to adjust our interpretation of the statute. And far from producing the assertedly "absurd" results the dissent forecasts, these guardrails head them off at the pass.[4] Dissent at 12.

---

[4] The dissent labels gamesmanship "irrelevant" while also offering one-sided examples of alleged gamesmanship that all involve the relocating parent. Dissent at 11-12. But gamesmanship is, regrettably, a two-way street. Just as possible are scenarios where a parent seeks more residential time in the parenting plan than they want or intend to use, knowing that it may prevent the other parent from moving (and moving on). In any event, all the facts in the dissent's

Finally, Wuesthoff makes his strongest point: that measuring residential time based on the current plan phase would disrupt the expectations of the nonrelocating parent and harm parents who, like Wuesthoff, have strong and loving bonds with their children. The facts here present a compelling backdrop for that argument, given the trial court's finding that both parents provided "exceptional" parenting, VRP at 16, and the guardian ad litem's conclusion at trial that T.W. was a "well-adjusted, happy, and bright child," loved by both parents. CP at 280.

We have repeatedly acknowledged—and do so again now—that relocation can be deeply painful and may fundamentally alter a family. *See, e.g.*, *Pape*, 139 Wn.2d at 715 ("We are aware of and are sympathetic to the difficulties faced by parents whose children move, with the other parent, some distance away."); *Littlefield*, 133 Wn.2d at 47 (relocation cases are "highly litigated" precisely because they are "intensely emotional"). But the legislature was aware of this and still chose the rebuttable presumption in favor of relocation.[5] Wuesthoff's argument to the

---

proposed scenarios would be available to—and no doubt considered by—the trial court. Only if the trial court ignored RCW 26.09.520(5) and any facts evidencing gameplay would the best-interest standard produce absurd results.

[5] The legislature added the presumption in 2000, the year after *Pape*. The dissent suggests, without explanation, that the legislature's further refinement of the presumption through RCW 26.09.525 somehow affects the fact that *Pape* was superseded. Dissent at 19 n.4. But the legislature could not have stated more clearly its intent to displace *Pape*. The 2019 amendment only affirmed that the Child Relocation Act applies to parents with substantially equal residential time.

contrary relies heavily on *Pape* and its holding that stability and the status quo are in the best interest of the child. *See* 139 Wn.2d at 717 (stating a "strong presumption that custodial continuity is in the child's best interest"). The dissent does the same. *See* dissent at 16 (emphasizing that the Parenting Act of 1987 "promotes permanent parenting plans").

The problem is that the Child Relocation Act intentionally superseded *Pape* and repeatedly acknowledged that relocation will often result in a "revised schedule of residential time" and a new "parenting plan." RCW 26.09.440(2)(b)(vi). *See also* RCW 26.09.530 (anticipating "modifications to the parenting plan" as a result of relocation). Wuesthoff and the dissent would have us gloss over that history, but it evidences the legislature's intent that the Child Relocation Act—and not statutes applicable to other types of modifications—control the inquiry.  In line with that intent, we hold that residential time for purposes of phased plans is calculated at the phase of the plan in place when the relocating parent serves notice of their intent to relocate, and not on time in future phases of the plan that have not yet taken effect.

C.      Remand Is Required To Determine Whether the Presumption in Favor of Relocation Applies

On this record, we lack the facts necessary to determine whether the rebuttable presumption in favor of relocation applies. We do not know the date Hauk served the notice of intent to relocate, a date necessary to compute residential time. And the

18

trial court made no factual finding as to whether, based on a present-time calculation, Wuesthoff would have met the 45 percent threshold for substantially equal residential time. This is significant because he expressly argued that when holiday time in the current phase of the parenting plan was properly counted, he crossed the 45 percent threshold. *See* CP at 234-35, 251-52, 465-66. And even if the presumption applies, it is, of course, rebuttable. RCW 26.09.520. We therefore remand for the trial court to make further factual findings and determine whether the presumption in favor of relocation applies. If it does, given the passage of time during this appeal, the trial court should conduct a new fact-finding hearing to consider evidence as to T.W.'s best interest based on current circumstances. *See In re Marriage of Little*, 96 Wn.2d 183, 198, 634 P.2d 498 (1981) (remanding for reconsideration of a custody order and providing that "[i]n order to insure that their best interests are served, the trial court should look into the present circumstances of the children and their parents").

## CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.

_____
Melody, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Montoya-Lewis, J.

_____
González, J.

_____

_____

_____
Madsen, J.P.T.

20

No. 104074-1

WHITENER, J. (dissenting)— In Washington, a relocating parent does not enjoy a presumption in favor of relocation if they have "substantially equal residential time," meaning at least 45 percent of the child's time is spent with the nonrelocating parent. RCW 26.09.525. In this case, where parents have adopted an automatic graduated parenting plan, we must decide whether courts should calculate "substantially equal residential time" based on the entire parenting plan or only one phase of the parenting plan. *Id*. The majority finds that the statute supports a finding that courts should consider only the ratio of residential time in the present phase of the parenting plan at the time notice of relocation is served. Majority at 2. I disagree.

"In making a determination of a modification [of a parenting plan] pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560." RCW 26.09.260(6). RCW 26.09.410(2) defines "relocate" as "a change in principal residence . . . in cases where parents have substantially equal residential time as defined by RCW 26.09.525." Notice must be provided to the nonrelocating parent, and it must include "[a] proposal in the form of a proposed parenting plan for a revised schedule of residential time or visitation

1

with the child." RCW 26.09.440(2)(b)(vi). Unlike other types of parenting plans, in a substantially equal residential time parenting plan, there is no rebuttable presumption that the intended relocation of the child will be permitted. RCW 26.09.525(1)(a). In calculating whether parents have "substantially equal residential time" under a given parenting plan, the court must "base its determination on the amount of time designated in the *court order*." RCW 26.09.525(2)(b) (emphasis added). A "court order" is a "temporary or permanent parenting plan, custody order, visitation order, or other order governing the residence of a child under this title." RCW 26.09.410(1).

To determine a modification of the court order based on the proposed relocation, "the court shall make a determination in the best interests of the child." RCW 26.09.525(1)(b).[1] All parenting plans, including "substantially equal

---

[1] The factors are

    (1) The relative strength, nature, quality, extent of involvement, and stability of the child's relationship with each parent, siblings, and other significant persons in the child's life;

    (2) Prior agreements of the parties;

    (3) Whether disrupting the contact between the child and the person seeking relocation would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation;

    (4) Whether either parent or a person entitled to residential time with the child is subject to limitations under RCW 26.09.191 or 26.09.192;

    (5) The reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation;

    (6) The age, developmental stage, and needs of the child, and the likely impact the relocation or its prevention will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;

    (7) The quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations;

    (8) The availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent;

residential time" plans, share the same overriding purpose of serving "the best interests of the child." RCW 26.09.002. "The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care." *Id.* Furthermore, "the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents ...." *Id.*

RCW 26.09.525 is ambiguous on whether a parent should enjoy a presumption in favor of relocation when the parents will have substantially equal residential time over the course of the entire parenting plan but do not have substantially equal time at the time notice of relocation is served. But the greater statutory context suggests an intent to consider parenting plans with a forward-looking lens. The best interest of a child is captured in the entire parenting plan, which is a forward-looking court order. *See* RCW 26.09.184(1)(g) ("[t]o otherwise protect the best interests of the child consistent with RCW 26.09.002"). The parenting plan (1) takes into consideration the child's changing needs over the child's

_____

(9) The alternatives to relocation and whether it is feasible and desirable for the other party to relocate also;
(10) The financial impact and logistics of the relocation or its prevention; and
(11) For a temporary order, the amount of time before a final decision can be made at trial. RCW 26.09.520.

adolescent lifetime, (2) must account for future dispute resolution, and (3) allocates decision-making authority for education, health care, and religious upbringing. *See* RCW 26.09.184(1)(c), (4), (5)(a). The parenting plan also includes the child's residential schedule, in other words, where the child will reside in the future. RCW 26.09.184(6).

In this case, the court ordered parenting plan referenced by RCW 26.09.525(2) is a forward-looking document. The entire order matters, not just one piece of it. Therefore, I would hold that courts calculate residential time for an automatic graduated parenting plan based on the entire parenting plan. Accordingly, I would affirm.

I.      RCW 26.09.525 is ambiguous as to the correct method of calculating "substantially equal residential time"

        a.  Statutory interpretation and ambiguity

The majority and I agree that RCW 26.09.525 is ambiguous with respect to calculating residential time in graduated parenting plans. Majority at 10. We disagree, however, on how to interpret the statute. This court interprets statutes de novo. *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007). In statutory interpretation, we first determine whether the "meaning of statutory language is plain

on its face." *State v. McNeal*, 156 Wn. App. 340, 352 n.18, 231 P.3d 1266 (2010). If it is, "we must give effect to that plain meaning as an expression of legislative intent." *Id.* To determine the plain meaning, "we consider the entire statute in which the provision is found, as well as related statutes or other provisions in the same act that disclose legislative intent." *City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006).

If a "statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 12, 43 P.3d 4 (2002); *see also SYNNEX Corp. v. Dep't of Revenue*, 34 Wn. App. 2d 857, 865, 572 P.3d 1214 (2025) ("A term in a statute is ambiguous if it is subject to more than one reasonable interpretation."). "Where two interpretations of statutory language are equally reasonable, our canons of construction direct us to adopt 'the interpretation which better advances the overall legislative purpose.'" *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 729, 406 P.3d 1149 (2017) (quoting *Weyerhaeuser Co. v. Dep't of Ecology,* 86 Wn.2d 310, 321, 545 P.2d 5 (1976)). "In ascertaining legislative intent, this court resorts to legislative history, statutory construction, and relevant case law." *Fraternal Ord. of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Ord. of Eagles*, 148 Wn.2d 224, 243, 59 P.3d 655 (2002). Here, whether

5

the use of present tense verbs in RCW 26.09.520 and RCW 26.09.525 refers to the present *phase* or the present *plan* is ambiguous because there are two equally plausible interpretations.

The mother, the petitioner in this case, argues that RCW 26.09.520 and RCW 26.09.525 require the trial court, when determining whether the parents have substantially equal residential time, to look only to whatever phase of the parenting plan the parties are *currently* in at the time the parent serves notice of relocation. Suppl. Br. of Pet'r at 2. The majority finds the statute ambiguous but nevertheless concludes "the statutory text and context…favors" the petitioner. Majority at 10. The majority bases its conclusion primarily on the use of present tense verbs in both statutes. *Id.* In RCW 26.09.520 those present tense phrases include "person *proposing*" and "person *entitled*" and "*is* feasible." *Id.* at 10-11. In RCW 26.09.525 those present tense phrases include "person *proposing*," "*has* substantially equal residential time," "time *is* spent," and "*has been* an ongoing pattern." *Id.* at 10-11. According to the majority, "nothing in the language of RCW 26.09.520 or 26.09.525 directs trial courts to consider the parties' future or anticipated conduct." *Id.* at 11. On this basis, the majority concludes that the legislature intended the calculation of residential time to consider only the present *phase* at the time of notice. *Id.* at 18. I think the majority infers too much from the use of present tense verbs.

The present tense language in RCW 26.09.520 and RCW 26.09.525 should be read to refer to the *current plan*, meaning the entire parenting plan, as opposed to the *current phase*. The present tense verbs in RCW 26.09.520 do not indicate anything about the calculation of residential time. That there currently "*is*" a rebuttable presumption and that a person currently "*may* rebut" that presumption does not offer insight as to whether the legislature wanted the court to look at the entire court order or only one part of the court order. The court need not engage in speculative guesswork to calculate residential time if the calculation is based on the entire court-ordered plan.

The majority's analysis gets us no closer to answering the issue presented and ignores some language in the statute. A court must base its calculations *only* "on the amount of time designated in the court order." RCW 26.09.525(2).[2] The statute does not distinguish between phased and unphased parenting plans, and it directs the court to consider the court ordered parenting plan, not a portion of it. Subtle variations of grammar in the statutory language do not prove that the legislature wants the court to consider only the current phase of a much larger parenting plan. The statute

---

[2] There is an exception in using the court order to calculate residential time. If there is an "ongoing pattern of substantial deviation from the residential schedule" that the parties cannot control and agree on, the court may take the deviation under consideration. RCW 26.09.525(2). Neither party argues the exception applies here. This decision does not address calculations based on deviations.

7

indicates the legislature did not want the court to consider uncontrollable circumstances, such as those that might affect a future custody agreement, but to consider *only the language in the court order*.

It is true that the legislature presumes a parent is acting in their child's best interest when they seek relocation, and it is also true that the "Child Relocation Act" (CRA), RCW 26.09.405-.560, seeks to serve the best interests of both the child and the parent. Majority at 12 (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 887, 895, 93 P.3d 124 (2004)). Neither of these conclusions, however, has anything to do with determining how RCW 26.09.525 applies in a graduated plan such as the one in this case. The "substantially equal residential time" exception to the presumption shows that the legislature intended to consider the interests of *both* custodial parents if their residential time, as stated in the court order, is "substantially equal." The exception also indicates that in the legislature's view, where there is substantially equal residential time, *both* parents are presumed to be acting in their child's best interest. *In re Marriage of Worthley*, 198 Wn. App. 419, 431, 393 P.3d 859 (2017). The petitioner is incorrect in arguing that the "present plan" interpretation "contradicts" the presumption that a parent is acting in the child's best interest. Suppl. Br. of Pet'r at 13. It need not contradict anything.

The majority concludes incorrectly that "[w]ith phased-in plans, measuring residential time according to the entire plan would void the relocation presumption much of the time, a result inconsistent with the legislature's purpose in enacting it." Majority at 12. RCW 26.09.520 makes no value judgment on how commonly the presumption in favor of relocation should apply, and the legislature never indicated how often it wanted the presumption to apply or that it preferred parenting plans where parents did not have substantially equal residential time. The statutory scheme states only that the presumption should not apply in any case where there is substantially equal residential time. RCW 26.09.525. If every relocation case included parents with substantially equal residential time, the presumption would simply never apply, which would neither invalidate nor undercut the legislature's intent in passing RCW 26.09.520. RCW 26.09.525 clearly tells us the legislature does not intend for the presumption to apply in certain cases. The question here is only whether this is one of those cases.

b. A lack of clarity concerning which point in time controls a "current phase" analysis further contributes to the statute's ambiguity regarding how to calculate residential time in a phased parenting plan

The majority adopts the petitioner's argument that the court should calculate residential time based on the phase of the plan the parties are in at the time the relocating parent serves notice on the nonrelocating parent, relying again on the use of present-tense verbs (i.e. "proposing") in RCW 26.09.520. Majority at 11. The father, the respondent, disagrees and argues that requiring the trial court to consider only the present phase of the plan would also require the court to decide whether to consider the "present" phase at the time of notice, objection, or trial, all of which could theoretically fall in different phases.

In cases such as this, where the nonrelocating parent has objected to the move and the case has gone to trial, the trial court is required to apply the 11 relocation factors based on circumstances at the time of trial. RCW 26.09.520. After the nonrelocating parent objects, the relocating parent is not permitted to relocate the child until the court grants permission. RCW 26.09.480(2). Several years may separate the time of notice and the trial. The CRA requires the court to consider the best interests of both the child and the relocating parent. *Horner*, 151 Wn.2d at 887. That does not mean, however, that the CRA requires the relocating parent's interest

to freeze when notice is filed and that only the child's interest is subject to changing circumstances. Here, for example, when this case goes back to the superior court, as the majority holds it should, the facts will be markedly different than they were when notice of relocation was originally filed. Majority at 19 ("[G]iven the passage of time during this appeal, the trial court should conduct a new fact-finding hearing to consider evidence as to T.W.'s best interest based on current circumstances."). The petitioner would have a presumption of relocation, but the child's best interest today is not the same as it was in 2022. It would be incompatible to find that the presumption should consider only the phase of the parenting plan at the time of notice but that the court should evaluate the best interest factors at the time of trial. There is no tenable reason to treat the presumption and the best interest factors so differently.

Furthermore, under the majority's analysis, the plan would freeze in time at the point of notice even if the relocating parent served the nonrelocating parent one day before the plan was set to adjust to a new phase granting each parent substantially equal residential time. Presumably it would apply even if the relocating parent was set to *lose* substantially equal residential time the day after they served notice. The respondent is correct that such a result would be "wholly unjust." Suppl. Br. of Resp't at 31. The majority's reading of the statute also creates significant

potential for "gamesmanship" because a parent could serve notice in phase three of the parenting plan that they intend to move four years later, at which point the relocating parent would still be entitled to the presumption despite both parties having had substantially equally residential time for several years. Suppl. Br. of Resp't at 30-31. To address this unjust result, the majority points out that there are other safeguards in place that the court could consider in deciding to rebut the presumption that relocation will be permitted under such circumstances. Majority at 16. Even if true, statutes should nevertheless not be interpreted in the first place to permit such absurd results.[3]

The majority notes that both sides have equal opportunities to participate in "gamesmanship." Majority at 15-16. This finding is irrelevant to determine whether the respondent has substantially equal residential time. There may be gamesmanship by either side, but the effect of freezing a presumption in one party's favor is more severe than requiring the court to consider the 11 relocation factors without a presumption. Here, for example, the trial court's final order indicated that "if Ms. Hauk had had that presumption, the court's decision to allow or deny relocation may have been different." CP at 421. Although gamesmanship is not an issue in this case,

---

[3] "A reading that produces absurd results must be avoided because 'it will not be presumed that the legislature intended absurd results.'" *Tingey*, 159 Wn.2d at 664 (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). "Where an absurd result is produced, further inquiry may be appropriate." *Id.*

the court's statement indicates that the presumption can be a determinative element in a court's decision. The factors might in some cases allow the courts to address gamesmanship by either party or both parties, but the impact of applying the presumption in favor of relocation should not be taken lightly. In child relocation cases, both parents might "exert appreciable control" over the other's life, either by preventing relocation or preventing regular contact with a child. Majority at 15-16. What the majority's conclusion grants is considerably more power to the relocating parent in a substantially equal residential time parenting plan.

The majority cites *Wrigley v. State* as evidence that the use of present tense verbs forecloses considering the entire plan instead of the current phase. Majority at 10, 11-12 (quoting and citing 195 Wn.2d 65, 73-77, 455 P.3d 1138 (2020)). *Wrigley* is inapposite as there the court considered at what point statements regarding dangerous behavior can constitute reports of child abuse or neglect and reasoned that the use of present tense verbs "indicate[s] that the legislature intended the reports to be based on existing conduct, not on future speculation." 195 Wn.2d at 75. In *Wrigley* relying on anything but present circumstances would have required problematic, if not impossible, speculation on whether a crime might one day occur. Here, despite the majority's assumption otherwise, the court need not speculate on anything. Majority at 12. The court must only calculate residential time based on the

parenting plan it ordered. The parenting plan in this case, bar any future changes, automatically gives the respondent equal residential time. A reliance on *Wrigley* requires the court to speculate that because it is *possible* a plan *may* change, any future-based provisions are effectively meaningless. The respondent's substantially equal residential time in phase four is not future speculation of the parents' circumstances. It is written in a court order. The court can simply base its calculation on that order with no guesswork required, which is precisely what the trial court did here. Therefore, *Wrigley* is inapplicable and unpersuasive.

The petitioner here argues that calculating substantial residential time over the course of a graduated plan would be harmful in cases where parents have conditional graduated plans (those hinging increased parenting time on completion of mental health or substance abuse counseling, for example) because it might prevent parents from moving due to conditions that might never be met. Suppl. Br. of Pet'r at 22-23. The respondent argues that his unconditional graduated plan should simply be treated differently from conditional graduated plans. Suppl. Br. of Resp't at 31. The two types of plans are, after all, fundamentally different entities, put in place for different reasons. *See* RCW 26.09.191(1). It is true that a "current plan" analysis in conditional graduated plans might create issues because those plans do not progress automatically, requiring parents to meet certain conditions. Therefore, the court

would be asked to predict future behavior. In this case, however, the parties have a court ordered parenting plan providing unconditionally for substantially equal residential time, requiring no guesswork on the part of the court. The majority concludes that conditional and unconditional plans should not be treated differently "because nothing in the statute distinguishes between conditional and unconditional plans." Majority at 15. However, nothing in the CRA addresses graduated plans *at all*, so there is no opportunity to distinguish them. The statute directs the court to consider only the plan before it. Here, that is an unconditional graduated parenting plan. We need not speculate on application to a type of plan that is not before this court.

Although a parenting plan can be altered, there is no assumption that it must be altered. *See* RCW 26.09.260(1) (Generally, "the court shall not modify a . . . parenting plan unless it finds . . . a substantial change has occurred in the circumstances."). Although the CRA allows for an easier modification of a parenting plan than RCW 26.09.260(1) originally allowed, the court must still first decide if modification is appropriate. *See* RCW 26.09.260(6) ("In making a determination of a modification pursuant to relocation of the child, the court shall first determine whether to permit or restrain the relocation of the child using the procedures and standards provided in RCW 26.09.405 through 26.09.560."); *see also In re*

*Parentage of Schroeder*, 106 Wn. App. 343, 352-53, 22 P.3d 1280 (2001) ("Any modification of a parenting plan, 'no matter how slight,' requires the court to conduct an independent inquiry." (quoting *In re Parentage of Smith-Bartlett*, 95 Wn. App. 633, 640, 976 P.2d 173 (1999))). The parenting plan is presumed to be applied as written. *See* RCW 26.09.184(1)(c) (One objective of a permanent parenting plan is to "[p]rovide for the child's changing needs as the child grows and matures, in a way that minimizes the need for future modifications to the permanent parenting plan.").

A statute is ambiguous where, like here, there are at least two equally plausible readings of the statute as applied to the question of how substantially equal residential time should be calculated in a graduated parenting plan. Therefore, we turn next to legislative intent. *City of Spokane*, 158 Wn.2d at 673.

II.    A "current plan" calculation better comports with legislative intent than a "current phase" calculation because the legislature promotes permanent parenting plans and supports a forward-looking "best interests of the child" standard

The Parenting Act of 1987, ch. 26.09 RCW, did not "explicitly address when a parent may or may not relocate a child and whether the parent must notify the other parent before relocation occurs." H.B. REP. ON ENGROSSED SUBSTITUTE H.B. 2884,

at 2, 56th Leg., Reg. Sess. (Wash. 2000). In 1997, this court held that a trial court has no authority "to order the primary residential parent of a child to live in a particular geographic area in order to facilitate frequent contact between the child and the other parent." *In re Marriage of Littlefield*, 133 Wn.2d 39, 41, 940 P.2d 1362 (1997). The court also noted that "the Legislature has not placed a statutory restriction on the ability of either parent to move and has not even required notification before a change of residence." *Id*. at 49. In response, the legislature amended the Parenting Act to permit "minor modification[s]," including relocation, if the parent could show (1) there has been a "substantial change in circumstances of either parent or of the child," (2) the proposal is a "minor modification in the residential schedule that: [d]oes not change the residence the child is scheduled to reside in the majority of the time," and (3) the proposal "[i]s based on a change of residence or an involuntary change in work schedule by a parent which makes the residential schedule in the parenting plan impractical to follow." H.B. 1514, at 2, 56th Leg., Reg. Sess. (Wash. 1999).

Shortly after, this court heard a case in which a mother, with whom her children lived most of the time, sought relocation to another part of the state via the "minor modification" statute. *In re Marriage of Pape*, 139 Wn.2d 694, 989 P.2d 1120 (1999). Per their parenting plan, the father had approximately 30 percent

residential time. *Id.* at 699. The court recognized "a growing body of social science literature that has identified the child's relationship with his or her primary caretaker as the single most important factor affecting the child's welfare." *Id.* at 708. The court then concluded that the minor modifications statute unambiguously permits adjustments to the residential schedule if (1) there has been a substantial change in circumstances for the child or for either parent, (2) the modification is minor, (3) the modification does not change the child's principal residence, and (4) the modification is made on the basis of a change of residence or work schedule. *Id*. at 711. The court rejected the father's argument that there should be no strong distinction between the "primary residential parent" and "nonprimary residential parent" in cases where both parents are actively involved in the child's life. *Id*. at 712.

In 2000, as the majority points out, the Washington State Legislature expressly superseded *Littlefield* and *Pape* by passing the CRA, which created a new framework for litigating the proposed relocation of a child, reducing barriers for parents with majority residential time. FINAL B. REP. ON ENGROSSED SUBSTITUTE H.B. 2884, 56th Leg., Reg. Sess. (Wash. 2000); *see also* majority at 17-18. The CRA includes the "rebuttable presumption" in favor of relocation for parents with majority residential time. *Id*. at 17.

In 2017, the Court of Appeals held that the CRA's framework for relocations "does not apply when the child's residential time is designated equal or substantially equal in the parenting plan and when the proposed relocation would result in a modification of this designation." *Worthley*, 198 Wn. App. at 424. Because the CRA defined "relocation" as a "change in *principal residence*" and its notice requirement applied only to a "person with whom the child resides *a majority of the time*," and neither of those phrases applied to a substantially equal parenting plan, it could not govern cases where custody was equal or substantially equal if relocation would change the residential time. *Id.* at 426-27 (quoting RCW 26.09.410(2), .430). Two years later, the legislature amended the CRA to include RCW 26.09.525, the statute now before us, ensuring that while the CRA applies to proposed relocations in which parents have substantially equal residential time, the presumption in favor of relocation does not.[4]

The legislature has not addressed how the phrase "substantially equal residential time" should apply to graduated parenting plans like the one here. Nor does the broader legislative history provide a definitive answer on how to calculate

---

[4] The majority concludes that the respondent here "relies heavily on *Pape* and its holding that stability and the status quo are in the best interest of the child," dismissing his arguments because "the Child Relocation Act intentionally superseded *Pape*." Majority at 18. The majority fails to acknowledge that the legislature added the "substantially equal residential time" provision, RCW 26.09.525, nearly 20 years after superseding *Pape*. While the CRA overall continues to apply to parenting plans with substantially equal residential time, the specific presumption provision at issue here plainly does not.

residential time under graduated parenting plans. On balance, the CRA and the cases propelling its development indicate the legislature intended to make relocation easier for parents who shoulder *more* residential responsibility and not those with "substantially equal residential time." The court and the legislature recognized the role that a parent with majority residential time plays in a child's life and understood that circumstances may arise in which it is impractical to limit that parent's relocation options to facilitate continued contact with the parent who has less residential time. However, while the legislative history clearly shows the CRA was intended to make it easier for parents with majority residential time to relocate, it does *not* show the legislature intended the same for "substantially equal residential time" parenting plans.

Most tellingly is that the Parenting Act sets a forward-looking standard. It contemplates "permanent" parenting plans that consider how best to "[p]rovide for the child's changing needs" over time and generally disfavor major modifications. RCW 26.09.184(1)(c). In this case, the court order established that both parents would care for the child equally for the majority of her childhood and teen years. Even if it is true that the petitioner cared for the child more than 55 percent of the time when notice was served, the automatic graduated parenting plan accounted for the fact that "children grow and change" and found that it was in the child's best

interest to grant both parents in the aggregate substantially equal residential time throughout her childhood and adolescence. Majority at 13. It would be odd for courts to facilitate implementation of a permanent parenting plan and then ignore the entirety of the plan, focusing only on a brief snapshot of it, when deciding whether to favor relocation, which is one of the most significant modifications that can be made to a parenting plan. Yet that is exactly what the majority holds. *Id.* at 18.

The CRA's rebuttable presumption in favor of relocation for parents is inapplicable here as we are not addressing a majority residential time parenting plan. Ultimately, given the overall statutory framework and RCW 26.09.525's direction that courts base the calculation on the court order, not a part of the court order, I would hold that when determining relocation under a "substantially equal residential time" parenting plan courts should calculate residential time based on the *entire* parenting plan, including unconditional future phases within the parenting plan.  I would affirm the Court of Appeals.

_____
Whitener, J.

_____
Johnson, J.

_____
Gordon McCloud, J.

_____
Mungia, J.